## Henry *against* Richardson.

A neglect by one who takes charge of an estray for the owner, to pursue the course prescribed by the statue, does not make him liable to an action of trover unless he uses the estray or refuses to deliver it up on demand.

Riding a horse taken up as an estray for the purpose of discovering the owner, is not such an act of conversion, as will support an action of trover.

ERROR to the common pleas of *Westmoreland* county.

T. T. Richardson against Henry Henry. This was an action of trover. The facts of the case seemed to be: that the plaintiff's horse strayed away, and came into the possession of the defendant; while in his possession, and after eight or ten days, he broke out of the inclosure, strayed off, and was taken up as an estray by another person, and upon regular proceedings had, was sold according to the provisions of the act of assembly. It appeared in evidence that while the horse was in the possession of the defendant he was ridden by him and by his son for the purpose, as they alleged, of showing the horse and finding out his owner. The son was sworn as a witness and said, " I went to my father's house to borrow a horse to go to Jacksonville, and he said I should have one, and then the next day he sent the stray horse to my house with a little boy, and the boy said that father had sent him that I should inquire about the owner of the beast. I rode the horse to Jacksonville, and a man by the name of Brooks told me it was Richardson's horse. Jacksonville is five or six miles from where I live."

The defendant's counsel requested the court to charge the jury upon the following points:

" 1. That the action of trover and conversion cannot be maintained for merely riding or using an estray mare or horse found upon the improved or inclosed lands of another.

" 2. That it was the duty of the defendant to give notice to the owner of the stray before he delivered to the town clerk a description of the colour, marks, &c. if the owner could readily be found ; therefore riding her for that purpose, or sending her abroad in the neighbourhood that she might be seen and recognized by persons who knew her owner, is not evidence of a conversion by defendant to support this action."

To which the court answered in substance as follows :

" The law gives no authority to the defendant to use a stray, consequently it was not lawful for him to ride her about: the act of assembly does not point this out as a mode of discovering the owner, and in point of law it was exercising such ownership as would war-

[Henry v. Richardson.]

rant a jury in presuming a conversion, if the defendant could not procure the animal when called on."

*Beaver*, for plaintiff in error,

It is a general rule that evidence of some tortious act of the defendant is essential to a conversion. Illegal conversion being the jist of the action of trover, it is not sufficient to prove a mere non feasance. 6 *East* 540 ; 2 *B. & A.* 704 ; 4 *Stark. Ev.* 1492 ; *Saund. on Pl. & Ev.* 880 ; 1 *Chitty's Pl.* 142. The defendant below did not obtain possession of the animal wrongfully : she strayed from her owner and was detained with a view to the owner's benefit. He exercised no ownership over the mare inconsistent with the owner's right : every act done by the defendant below was done with a view to the owner's benefit : defendant's acts clearly negative the idea of an illegal conversion. The case of Drake *v.* Shorter, 4 *Esp.* 165, states the principle clearly, that "if the thing for which the action was brought, and which had been lost, was taken to do a kindness to the party who owned it, and without any intention of injury to it or converting it to his own use, it could not be deemed an illegal conversion, as in such case it would be a justification to an action of trespass, and a good answer to an action of trover." The same principle is stated and relied on in the case of Merriam *v.* Nelson, 4 *Pick. Rep.* 249. The defendant below did not at any time assume the right of disposing of the animal to the exclusion of the owner's right nor claim her as his property: "*he rode her to give her owner notice where to find her, and sent her abroad in the neighbourhood for the same purpose,*" proclaiming her to be an estray. That use of the animal was intended for the owner's benefit and was therefore justifiable ; Bagshawe *v.* Goward, *Cro. Jac.* 148 ; it was for the purpose of "*giving notice to the owner if he could readily be found,*" and was therefore the performance of a duty prescribed by the law, act of the 13th of April 1807. Shutting up the animal in a pound or stable would not have been so likely to give her owner notice : nor is it material in the present action, that the animal strayed out of defendant's possession before the plaintiff came to take her away ; for if the defendant was justly chargeable with *negligence* and *omission,* the remedy is an action on the case, and not *trover.* Mulgrove *v.* Ogden, *Cro. Eliz.* 219 ; 1 *Chitty's Pl.* 142 ; 4 *Stark. Ev.* 1492. The court below erred in charging the jury, that using the mare for the purpose of giving her owner notice, was a conversion in fact, unless the defendant could produce her when called on. The law is well settled that a demand and refusal are only evidence of a conversion, but are not any evidence of a conversion where he has not the possession and cannot deliver it. 1 *Camp.* 439 ; 4 *Stark. Ev.* 1495 ; Dewell *v.* Maxon, 1 *Taunt.* 391 ; *Saund. on Pl. & Ev.* 884. The principle, therefore, that the conversion by the defendant depended upon the contingency of his ability to produce the mare when called for, is erroneous: it had a direct operation on the evidence, and with-

[Henry v. Richardson.]

drew the attention of the jury from the facts pertinent to the issue; for the only question left for the jury was the amount of damages, the court having declared that *riding* the mare for the purpose of ascertaining who was the owner and to give him notice was exercising such acts of ownership as in law would warrant a jury in finding a conversion by the defendant. The judgment ought therefore to be reversed. Joel *v.* M'Cormick, 3 *Serg. & Rawle* 344.

*Coulter*, for defendant in error, cited, *Cro. Jac.* 147; *Cro. Eliz.* 219; 1 *Term Rep.* 12; 12 *Co.* 102; *Cowp.* 476; 1 *Com. Dig.* 221; *Yelv.* 194; 4 *Pick. Rep.* 249; 10 *Johns. Rep.* 176; 4 *Watts* 301.

The opinion of the Court was delivered by

ROGERS, J.—Merriam *v.* Nelson, 4 *Pick.* 249, establishes the principle that where a person takes an estray, to keep it for the owner, but neglects to pursue the course prescribed by the statute, he is nevertheless not liable to an action of trover, unless he uses the estray, or refuses to deliver it up on demand. Here it is conceded that the horse was taken up with the view of preserving it for the owner, but escaped from the possession of the defendant without any fault of his. There is therefore nothing in this part of the case on which the defendant can be held liable; and particularly in this form of action; for trover will not lie for negligently keeping an estray. Mulgrove *v.* Ogden, *Cro. E.* 219. The doubt arises on the answer to the second point. The court charged the jury, in substance, that riding the horse, even with the intention of finding the owner, was a conversion. The use or abuse of an estray is such a conversion as will support trover or trespass, for the law will not permit the working an estray. Oxley *v.* Wells, 1 *T. R.* 12; Bagshawe *v.* Goward, *Cro. J.* 147. But whether an estray may not be used for the purposes stated in this point, is another question. Even in the case of a distress, in Duncomb *v.* Reeve, *Cro. E.* 783, it was said by Popham, C. J., that one may, in some cases, meddle with and use a distress, when it is for the owner's benefit; as where one distrains armour, he may cause them to be scoured to avoid rust; so if one distrains raw cloth, he may cause it to be pulled, for it is for the owner's benefit. In Rex *v.* Cotton, 2 *Ves.* 294, this case is noticed, but no opinion is given whether a cow taken as a distress may be milked; but Parker, C. B., refers to *Cro. J.* 148, and 12 *Co.* 335, as authorities for the affirmative. But however this may be as to a distress, and perhaps the authorities may render the point doubtful, yet the law is certainly so in the case of an estray, which, in some respects, stands on a different footing; and the reason for the distinction is, that in the case of an estray, unlike distress, the party taking them is bound to find them in food as long as he keeps them. An estray may be used for the benefit of the owner, as, for example, a cow may be milked. Was, then, riding the estray, under the circumstances, for the benefit of the owner? and if the search had resulted in finding the owner,

[Henry v. Richardson.]

there would have been no doubt about it.    But can the result alter the principle ?    We conceive it cannot.  . The act of April 1807 makes it the duty of a person who takes up an estray to give notice to the owner, if he can be readily found, and this obviously with the inten-- tion of avoiding the expense which must otherwise be incurred.    It would therefore seem that the legislature did not intend to prevent him from taking the ordinary means to discover who was the owner, and the most obvious one would be, to show the animal, and parti- cularly a horse, in the neighbourhood to which he most likely be- longed.    When this has been done in good faith, it would seem to be a harsh construction of the act to hold this, which was intended for the owner's special benefit, a conversion to his own use.    If, however, as in Bagshawe *v.* Goward, *Cro. J.* 147, the estray was used for other purposes, it would be a conversion.    There the horse was used for the benefit of the defendant, and not the owner.    The court say it is not lawful to work an estray in any manner, unless in case of necessity, and for the benefit of the owner, as to milk milch- kine, because otherwise they would be spoiled; and so of the like ; but to use a stray horse by riding or drawing is tortious; although it was alleged that the common course is to use stray horses with withs about their necks.    And this the court properly say would be an abuse.    The case of Bagshawe *v.* Goward decides that a person can- not use an estray for his own purposes, although he may at the same time indicate that the animal he is so using is an estray.    But that was a very different question from the present.    Suppose the defen- fendant had been told that the horse belonged to a neighbour, would he be liable to an action for riding the horse or sending him by an- other to ascertain the fact, although he was misinformed?    This would not be such a use or such an abuse of the thing as to amount to a conversion.    The principle which governs this case is also stated in Drake *v.* Shorter, 4 *Esp. Rep.* 165.    That was trover for a boat. The plaintiff, who was employed in an invention for making a ves- sel·sail against wind and tide, had employed the defendant to work on her.    While he was working the vessel took fire.    The defen- dant took a boat belonging to the plaintiff to endeavour to extinguish it, but she was sunk and lost.

It was contended, that while the defendant was working on the vessel, it was his duty to take care of her, and that the interference was to prevent the fire spreading, by means of which the accident happened ; which he contended was lawful.

Lord Ellenborough said, that if the fact were so, he thought it amounted to a defence ; that what might be a tort under one circum- stance might, if done under others, assume a different appearance. As, for example, if the thing for which the action was brought, and which had been lost, was taken to do a work of charity or to do a kindness to the party who owned it, and without any intention of injury to it or of converting it to his own use ; if, under any of these circumstances, any misfortune happened to the thing, it could not be

[Henry v. Richardson.]

deemed an illegal conversion ; but, as it would be a justification in an action of trespass, it would be a good answer to an action of trover.

It is the intention with which the thing is used which makes it lawful. If the horse was ridden with the sole and *bona fide* intention to discover the owner, it is not a conversion ; but the law will be otherwise if used for his own benefit, although under that pretext. Nor need we apprehend that this will lead to an abuse, as the jury must judge of the intention.

Judgment reversed, and a *venire de novo* awarded.